SUSAN M. CHEHARDY, Judge.
 

 12This is a workers’ compensation proceeding in which the claimant appeals the ruling of the workers’ compensation judge that he forfeited his right to receive any further benefits. We affirm.
 

 FACTS
 

 John J. Freeman was employed by Elliott Company as a steam turbine mechanic when he sustained a back injury in a work-related accident on January 22, 1998.
 
 [1]
 
 He underwent several surgeries over the course of time and attempted to perform light-duty jobs for his employer, but eventually was laid off by Elliott. As a result of the injury he received medical benefits and indemnity benefits for several years.
 

 In September 2004, Freeman was involved in a non-work-related motor vehicle accident. He filed suit regarding that accident and the suit eventually was settled.
 
 [2]
 
 He neither notified Elliott Company of the pendency of the lawsuit nor sought the company’s approval before settling it.
 

 In November 2007 Freeman filed a Disputed Claim for Compensation against Elliott Company and its workers’ compensation insurer, Hartford Fire [¡¡Insurance
 
 *346
 
 Company (both hereafter collectively called “Elliott”). Freeman complained that Elliott had refused to authorize medical treatment recommended by his treating physicians. He also sought attorney’s fees and penalties for nonpayment for his medical treatment.
 

 In answer Elliott denied that Freeman is entitled to additional benefits or to penalties and attorney’s fees. Elliott asserted its right to reduce benefits and to various credits/offsets pursuant to La. R.S. 23:1206, La. R.S. 23:1212, and La. R.S. 23:1225.
 
 [3]
 
 Elliott further asserted the right to a credit for any amounts that Freeman receives or has received from third parties as a result of his alleged job injuries, as well as a credit for any wages that he earned with any employer after the date of this accident. Finally, Elliott asserted the right to a credit for any amounts that it paid to or on behalf of Freeman as a result of the January 22, 1998 job accident.
 

 In January 2008, Elliott ceased payment of benefits for the 1998 injury.
 
 [4]
 
 In December 2008 Freeman filed an Amended and Supplemental Disputed Claim for Compensation. He sought a determination that he is permanently and totally disabled as a result of the 1998 accident, reinstatement of his disability benefits and medical payments, and penalties and attorney’s fees.
 

 In answer to the amended and supplemental claim, Elliott denied that Freeman is entitled to additional benefits, denied that he requires additional medical treatment as a result of the January 1998 job accident, and denied that he is entitled to penalties and attorney’s fees. Elliott asserted that, pursuant to La. R.S. 23:1102(B), by settling his claim against a third party without Elliott’s prior written approval, Freeman forfeited the right to additional benefits. Elliott |4reiterated its rights to reduction/offset of and/or credits against benefits pursuant to La. R.S. 23:1206, 23:1212, and 23:1225.
 

 At the start of trial, the parties stipulated that Freeman was an employee of Elliott Company on January 22,1998; that he suffered an accident in the course and scope of his employment on that date; that Hartford Fire Insurance Company is the workers’ compensation insurer of Elliott Company for the January 1998 accident; and that Freeman’s average weekly wage for the four weeks prior to his January 1998 accident was $1,059.28.
 

 The issues at trial were the extent of Freeman’s present disability as a result of the January 1998 accident, whether Freeman is entitled to penalties and attorney’s fees for premature and unwarranted cessation of his benefits, and whether Freeman forfeited his rights to additional workers’ compensation benefits by settling the lawsuit arising out of the 2004 accident without Elliott’s written approval. Freeman filed into evidence his medical records from numerous healthcare providers, as well as a rehabilitation job analysis, a job accidents report, and his earnings statement. Elliott filed in evidence the deposi
 
 *347
 
 tions of Freeman and of his treating psychiatrist, as well as a copy of the pleadings from Freeman’s tort suit arising out of the 2004 vehicle accident.
 

 After taking the case under advisement, the workers’ compensation judge dismissed Freeman’s claim with prejudice and at his costs. In written reasons incorporated into the judgment, the judge held that Freeman had forfeited his right to additional compensation as a result of his January 22, 1998 job accident. The judge concluded that Freeman did not carry his burden of proving by clear and convincing evidence that he is permanently and totally disabled. Citing Freeman’s testimony that he occasionally provides and is paid for renovation services to customers, the judge found that Freeman presented no medical evidence to support |shis claim of permanent total disability. The judge stated further that the only medical evidence regarding Freeman’s disability status was the deposition of his psychiatrist, who testified that Freeman is disabled from a psychiatric standpoint only to the extent that he is disabled from a physical standpoint. The judge noted that Freeman introduced no evidence of total disability from a physical standpoint.
 

 Freeman appeals. He asserts the trial court erred (1) by finding that Freeman had forfeited his rights to additional benefits, and (2) by failing to grant Elliott a credit against future benefits instead of finding that Freeman forfeited his rights to additional workers’ compensation benefits pursuant to La. R.S. 23:1102(B).
 

 LAW AND ANALYSIS
 

 Forfeiture of Right to Future Compensation
 

 La. R.S. 23:1101 provides that any person who has paid compensation to an employee may bring suit to recover such amount from a third person whose action has aggravated the employee’s pre-exist-ing injury for which compensation is due. La. R.S. 23:1101(B)-(C).
 

 Either party (whether employee or employer) who files suit against the third party shall notify the other in writing. La. R.S. 23:1102(A)(1). In addition, “[i]f the employee ... fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee ... shall forfeit the right to future compensation, including medical expenses.” La. R.S. 23:1102(B).
 

 If the employee makes a compromise with the third person, the employer/insurer shall be liable to the employee for any benefits in excess of the full amount paid by the third person, “only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise ... | fiand
 
 only if mitten approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise.”
 
 (Emphasis added.)
 
 Id.
 

 La. R.S. 23:1102(C) provides, “For purposes of this Section, ‘third person’ shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay benefits under this Chapter
 
 because the injury by the third party has aggravated the employment related injury.”
 
 (Emphasis added.)
 

 Freeman argues no medical evidence was introduced at trial to prove either that the auto accident aggravated any of his pre-existing back problems, or that his psychological problems were aggravated by the auto accident. He asserts Elliott failed to carry its burden of proving the third-party accident caused an injury or
 
 *348
 
 aggravation to his condition that obligates Elliott to pay additional workers’ compensation benefits. Freeman asserts that his disability before and after the auto accident was mainly due to his psychological injuries, and that he has not reached maximum medical improvement. He states there was no evidence that his mental injuries from the work accident were aggravated by the auto accident.
 

 Freeman contends he was not required to seek approval of the settlement from Elliott and did not forfeit his right to future compensation benefits, because Elliott failed to prove it has any past or future exposure to pay workers’ compensation benefits due to any injuries suffered by Freeman in the auto accident.
 

 In response, Elliott cites Freeman’s deposition testimony, in which Freeman related having undergone several surgeries by Dr. Bonati, specifically the following colloquy:
 

 |7Q. Going back before your automobile accident now. After your last surgery with Dr. Bonati, were you still having back pain?
 

 A. No.
 

 Q. So you had no symptoms, and then you were involved in this automobile accident in 2004?
 

 A. Yes, sir.
 

 Q. And you had recurring back pain?
 

 A. Yes, sir.
 

 Elliott points out this testimony is consistent with the trial testimony of Freeman’s wife, who stated that before the September 2004 accident, Freeman’s back was as good as it had been at any time since his job accident.
 

 Freeman’s testimony also is consistent with the medical records of Dr. Stefan Pribil, who treated Freeman for the injuries he sustained in the September 2004 automobile accident. Dr. Pribil’s notes for November 9, 2004 stated that Freeman had pre-existing back problems related to his job accident, but that he was “doing reasonably better until he was in an accident on September 10, 2004.” Dr. Pribil noted that Freeman told him that “other than hip pain his back was better and did not have much radiating pain.” On August 25, 2004 Dr. Pribil reported that prior to the automobile accident Freeman “was doing quite well,” but since the accident, “he has not been able to do much and is in constant pain.” Dr. Pribil also noted that since the automobile accident Freeman “has been in intractable pain.”
 

 The workers’ compensation judge relied on
 
 Haynes v. United Parcel Service,
 
 2005-2378 (La.7/6/06), 933 So.2d 765. In
 
 Haynes
 
 the Louisiana Supreme Court found that the court of appeal erred in reversing the judgment of the Office of Workers’ Compensation which held a claimant forfeited his right to workers’ compensation benefits by settling claims for subsequent accidents without his employer’s approval.
 
 Haynes,
 
 2005-2378 at p. 1, 933 So.2d at 766. The court stated,
 

 |sThe 1989 amendment to LSA-R.S. 23:1101 allows compensation insurers reimbursement from persons who aggravate work-related injuries and thereby extend the obligation to pay compensation benefits.
 

 [[Image here]]
 

 Under La. R.S. 23:1101(0, it is clear that if the third-party tortfeasors aggravated Mr. Haynes’ work-related injury, his employer would have reimbursement rights against them and Mr. Haynes would have an obligation to obtain written approval from his employer prior to settling with these tortfeasors, under the penalty of forfeiting his benefits pursuant La. R.S. 23:1101(B).
 

 Haynes,
 
 2005-2378 at 6, 933 So.2d at 769.
 

 [Wjhen a work-related injury is subsequently exacerbated, the aggravation is
 
 *349
 
 regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from work and even after the employment is terminated. It is thus a compensable injury, for worker’s compensation purposes, thereby obligating the employer to continue paying compensation benefits.
 

 Hanover Ins. Co. v. Allstate Ins. Co.,
 
 554 So.2d 1261, 1264 (La.App. 1 Cir.1989).
 

 Considering the above, we conclude the workers’ compensation judge correctly found that the injury in the 2004 auto accident aggravated Freeman’s prior job-related injury and that he forfeited his rights to future benefits by failing to obtain Elliott’s written approval at the time of or prior to the compromise.
 

 Availability of Buy-Back Provision
 

 Freeman asserts he is entitled to “buy back” his rights, even if this Court affirms the ruling he forfeited his rights to future compensation. He relies on the following language from La. R.S. 23:1102(B):
 

 Notwithstanding the failure of the employer to approve such compromise, the employee’s or dependent’s right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer |9exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim.
 

 Freeman asserts that Elliott was not required to pay additional compensation benefits as a result of the auto accident and, further, that Elliott has not paid any benefits since the accident. He argues this relieves him of his obligation to pay anything to buy back his right to compensation.
 

 Elliott does not contest Freeman’s right to buy back his right to benefits, but asserts the statute requires that Freeman first pay Elliott an amount equal to the benefits previously paid, up to fifty percent of the settlement proceeds. Elliott argues that Freeman’s right to additional worker’s compensation benefits remains forfeited because he has not offered to buy back his rights.
 

 The right to buy back is not conditioned upon notification and approval.... Rather, we interpret the “buy back” provision of R.S. 23:1102(B) — “Notwithstanding the failure of the employer to approve such compromise” — to mean “in spite of’ and includes those situations where the employee fails to give notice of a proposed compromise and as a result, fails to obtain his employer’s approval. An employee has the right to buy back his workers’ compensation and medical benefits regardless of notice and approval by tendering an amount in conformance with the statute.
 

 * * *
 

 The statute is conspicuous in its absence of a time limitation for the tender. The buy back clause simply says future benefits “shall be reserved upon payment ...” without specifying when payment must be made.
 

 Diebold v. Louisiana Coca Cola Bottling Co., Ltd.,
 
 542 So.2d 52, 54 (La.App. 4 Cir.1989).
 

 The workers’ compensation judge did not address the issue of Freeman’s “buy
 
 *350
 
 back” right. However, the court’s ruling that Freeman is not permanently [inand totally disabled indirectly deals with that issue, at least insofar as Freeman’s right to permanent total disability benefits.
 

 Permanent Total Disability
 

 Freeman has not appealed the determination that he is not permanently and totally disabled. Accordingly, that part of the ruling is final. Nevertheless, we address it out of an abundance of caution, as it relates to the buy-back provision.
 

 La. R.S. 23:1221(2)(a) defines permanent total disability as the inability of an employee “to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience.”
 

 La. R.S. 23:1221(2)(b) provides that “compensation for permanent total disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.” The statute further provides,
 

 [Wjhenever the employee is not engaged in any employment or self-employment ..., compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
 

 La. R.S. 23:1221(2)(c).
 

 |nIt is the trial court’s function to determine the weight to be accorded medical and lay testimony in a workers’ compensation claim for award of disability benefits, and its factual determination should not be disturbed on appellate review unless it is clearly wrong and trial judge has committed manifest error.
 
 Starkman v. Munholland United Methodist Church,
 
 97-661, p. 15 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277, 1284,
 
 writ denied,
 
 1998-0400 (La.3/27/98), 716 So.2d 891.
 

 Under the language of La. R.S. 23:1221, the workers’ compensation judge did not err in finding that Freeman is not permanently and totally disabled. The judge’s factual findings are not clearly wrong.
 

 The trial court’s ruling did not forbid Freeman from taking advantage of the “buy-back” provision, but the determination that Freeman is not entitled to future benefits for permanent total disability prohibits Freeman from employing the buyback for future permanent total disability benefits. The issue of whether Freeman is disabled to a lesser extent, and the duration of that disability, was not part of the ruling and has not been raised on appeal.
 

 DECREE
 

 For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the claimant, John J. Freeman.
 

 AFFIRMED.
 

 [1]
 

 . In some of the pleadings, Elliott refers to itself as “Elliott Turbomachineiy.” According to Freeman, Elliott Company is in the business of rebuilding steam turbines and compressors for the oil industry.
 

 [2]
 

 . Freeman v. Miller,
 
 No. 623-658, 24th Judicial District Court, Parish of Jefferson, State of Louisiana; filed August 15, 2005; dismissed October 29, 2007 on motion of the plaintiffs.
 

 [3]
 

 . These include the following: under La. R.S. 23:1206, credits for voluntary payment of benefits not due and payable when made; under La. R.S. 23:1212, offset for medical expenses; under La. R.S. 23:1225, offset for receipt of Social Security disability benefits, credit for receipt of unemployment compensation benefits, and reduction for receipt of disability benefits under plans funded by any employer of Freeman and/or receipt of other workers' compensation benefits.
 

 [4]
 

 . According to Freeman, the reason he was given was that “the ten-year limitation was over." We construe that as a reference to the 520-week limitation on supplemental earnings benefits imposed by La. R.S. 23:1221(3)(d).